**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AARON RUBENSTEIN,

      Plaintiff,

          – v. –

HC2 HOLDINGS, INC.,

      Defendant,

          – and –

NOVATEL WIRELESS, INC.

      Nominal Defendant.

---

**ECF CASE**

**15 CIVIL 6939 (SAS)**

**MEMORANDUM OF LAW**
**IN SUPPORT OF SETTLEMENT APPROVAL**
**AND AWARD OF ATTORNEYS' FEES & DISBURSEMENTS**

**David Lopez**
**171 Edge of Woods Road**
**P.O. Box 323**
**Southampton, New York 11968**

**Miriam Tauber**
**885 Park Avenue, No. 2A**
**New York, New York 10075**

***Attorneys for Plaintiff***

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... iii

OVERVIEW ................................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.   THE COURT MUST DETERMINE THE ADEQUACY AND FAIRNESS
     OF THE SETTLEMENT ONLY TO THE EXTENT NECESSARY
     TO ENSURE DILIGENT PROSECUTION OF THE LITIGATION..................... 2

     A.  A Section 16(b) Suit Is Not a "Derivative Action"
         Within the Meaning of Rule 23.1 or Local Civil Rule 23.1.1 ................ 2
     B.  The Court Should Approve the Stipulation of Settlement
         as  Diligent[] ... Prosecution" of the Company's Section 16(b) Rights.................. 6

II.  SHAREHOLDER NOTICE OF THE PROPOSED SETTLEMENT AGREEMENT IS
     NOT NECESSARY UNDER THE CIRCUMSTANCES OF THIS CASE........................... 7

     A.  Notice is Not Required Under
         *Rosen v. Price* and Precedents Decided Post-*Rosen* ................................ 7
     B.  Dispensing With Shareholder Notice Discretionary................................ 9

III. ASSUMING THE *GRINNELL* FACTORS APPLY, THEY SUPPORT THE
     FAIRNESS, ADEQUACY, AND REASONABLENESS OF THE SETTLEMENT........... 10

     A.  The Negotiating Process Entitles the Stipulation of
         Settlement to a Presumption of Fairness, Adequacy, and Reasonableness .......... 12
     B.  The Terms of the Settlement  Agreement
         Satisfy the Substantive *Grinnell* Factors ............................................. 13

     1.  *Grinnell* Factor One:
         The Complexity, Expense, and Likely Duration of Litigation ............................ 13
     2.  *Grinnell* Factor Three:
         The Stage of the Proceedings and Extent of Discovery........................................ 13
     3.  *Grinnell* Factors Four and Five:
         The Risks of Establishing Liability and Damages................................................ 15
     4.  *Grinnell* Factors Eight and Nine:
         The Reasonableness of the Settlement Fund in Light of the Best Possible
         Recovery and in Light of All the Attendant Risks of Litigation ......................... 17
     5.  *Grinnell* Factor Seven:
         The Ability of the Defendants to Withstand a Greater Judgment......................... 17

6.  The Congressional Purpose to Cause
Disgorgement of Short-Swing Trading Profits ...................................................... 18

IV. THE LEGAL FEES AND DISBURSEMENTS
AGREED TO ARE FAIR AND REASONABLE ................................................................... 18

A.  The Agreement Between Plaintiff's Counsel and
Defendants Should Be Given Great Deference ..................................................... 19

B.  Applicable Standards ........................................................................................... 20

1.  Benefit Conferred .............................................................................................. 19
2.  Contingent Nature of the Fee and Risks of Litigation ....................................... 21
3.  Magnitude and Complexity of the Action ......................................................... 22
4.  Quality of Representation .................................................................................. 22
5.  The Lodestar Approach ..................................................................................... 23
6.  Public Policy ..................................................................................................... 24

CONCLUSION ................................................................................................................... 24

CERTIFICATE OF SERVICE .......................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Access Now, Inc. v. AMH CGH, Inc.*,
  No. 98-3004-CIV, 2001 U.S. Dist. LEXIS 12876 (S.D. Fla. May 8, 2001)................................ 9

*Adair v. Bristol Technology Systems, Inc.*,
  No. 97 Civ 5874 (S.D.N.Y. Nov. 12, 1999) .......................................................................... 19

*Bello v. Integrated Resources, Inc.*,
  [1990-1991 Transfer Binder Fed. Sec. L. Rep] (CCH) (S.D.N.Y. 1984)................................ 19

*Blau v. Mission Corp.*,
  212 F.2d 77 (2d Cir. 1954) ........................................................................................................ 3

*Blau v. Oppenheim*,
  250 F. Supp. 881 (S.D.N.Y. 1966) ............................................................................................ 4

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..................................................................................... 10, 11, 21, 22

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. 2005) ............................................................................................. 12

*Donoghue v. Achillion Pharmaceuticals*,
  No. 14 Civ. 8353 (PAC) (S.D.N.Y. filed Oct. 20, 2014)........................................................... 8

*Donoghue v. CSX Corp.*,
  No. 08 Civ. 9252 (MGC), 2009 U.S. Dist. LEXIS 97086 (S.D.N.Y. Mar. 9, 2009)................. 3

*Donoghue v. FutureFuel Corp.*,
  No. 11-cv-5515 (PGG) (S.D.N.Y. Oct. 18, 2011) .................................................................... 8

*Donoghue v. Golden State Bancorp.*,
  No. 02-cv-2404 (TPG) (S.D.N.Y. Aug. 4, 2006) ...................................................................... 8

*Dreiling v. American Express Company*,
  458 F.3d 942 (9th Cir. 2006) .................................................................................................. 15

*FTR Consulting, Inc. v. Soin*,
  No. 1:05-cv-00008-JJF-LPS, 2005 U.S. Dist. LEXIS 20013 (D. Del. 2005)......................... 11

*Goldstein v. QVT Associates GP LLC*,
  No. 10-cv-2488 (HB)(AJP) (S.D.N.Y. Feb. 3, 2011).............................................................. 8

*Gollust v. Mendell*,
  501 U.S. 115 (1991)............................................................................................................... 3, 4

*Graubard v. Miller*,
  11 N.Y. 3d 588 (2008)............................................................................................................ 21

*Greco v. Local.com*,
  806 F. Supp. 2d 653 (S.D.N.Y. 2011) ..................................................................................... 3, 7

*Green v. American Express Co.*,
  200 F.R.D. 211 (S.D.N.Y. 2001) ............................................................................ 9

*Gryl v. Shire Pharmaceuticals Group PLC*,
  298 F.3d 136 (2d Cir. 2002) ................................................................................. 3

*In re Agent Orange Products Liability Litigation*,
  818 F.2d 226 (2d Cir. 1987) ........................................................................... 21, 23

*In re Allister Inns Securities Litigation*,
  No. 88 Civ. 9282 (PKL), 12991 U.S. Dist. LEXIS 20402 (S.D.N.Y. Nov. 20, 1991) ............ 18

*In re AOL Time Warner Shareholder Derivative Litigation*,
  No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260 (S.D.N.Y. Sept. 6, 2006) .............. 11

*In re Global Crossing Securities & ERISA Litigation*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................. 13

*In re Gulf Oil/Cities Service Tender Offer Litigation*,
  142 F.R.D. 588 (S.D.N.Y. 1992) ............................................................................. 19

*In re IMAX Securities Litigation*, No. 06 Civ. 6128 (NRB),
  2012 U.S. Dist. LEXIS 86513 (S.D.N.Y. June 20, 2012) ......................................... 13

*In re IPO Securities Litigation*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................... 10, 11, 13

*In re New York City Municipal Securities Litigation*,
  [1984 Transfer Binder] Fed. Sec. L. Rep. (CCH) (S.D.N.Y. 1984) ......................... 19

*In re Quest Software, Inc. Derivative Litigation*,
  No. SACV06-763 (C.D. Cal. Aug. 15, 2008) ........................................................ 20

*In re Sony SXRD Rear Projection Television Class Action Litigation*,
  No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1, 2008) ............. 13

*In re Telik, Inc. Securities Litigation*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................................. 12

*In re Union Carbide Consumer Products Business Securities Litigation*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................................ 22

*In re Veeco Instruments Securities Litigation*,
  No. 05 M.D. La. 1695 (CM), 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) ......... 17

*In re Warner Communications Securities Litigation*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................ 19

*Koster v. (American) Lumbermens Mutual Casualty Co.*,
  330 U.S. 518 (1947) ................................................................................................ 5

*Krome v. Merrill Lynch & Co.*,
  85 Civ. 765 (DNE) (S.D.N.Y. May 7, 1991) ......................................................... 19

*Levy v. GE Capital Corp.*,
  No. 99 Civ. 10560 (AKH), 2001 U.S. Dist. LEXIS 13099 (S.D.N.Y. Aug. 30, 2001) ............ 18

*Lewis v. Rosenberg*,
   No. 120-12, 1958 U.S. Dist. LEXIS 4187 (S.D.N.Y. Apr. 11, 1958) ...................................... 7

*Matter of Continental Illinois Securities Litigation*,
   962 F.2d 566 (7th Cir. 1992) ................................................................. 23

*Malchman v. Davis*,
   761 F.2d 891 (2d Cir. 1985) ................................................................. 20

*Maley v. Del Global Technologies Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................... 14

*Mendell v. Gollust*,
   909 F.2d 724 (2d Cir. 1990) ................................................................. 4

*Morales v. Adept Technologies Inc.*,
   No. 00-cv-957(LMM) (S.D.N.Y. May 29, 2001) ................................................... 8

*Morales v. Auspex Systems, Inc.*,
   No. 00-cv-1173(KMW) (S.D.N.Y. June 6, 2001) .................................................. 8

*Morales v. New Valley Corp.*,
   No. 95 Civ. 1246 (CSH), Docket No. 85 (S.D.N.Y. Mar. 16, 1999).............................. 9

*Pino v. Pocasio*,
   101 F.3d 285 (2d Cir. 1996) ................................................................. 20

*Polar International Brokerage Corp. v. Reeve*,
   187 F.R.D. 108 (S.D.N.Y. 1999) .............................................................. 10

*Rosen v. Price*,
   No. 95 Civ. 5089 (CSH), 1998 Dist. LEXIS 9198 (S.D.N.Y. June 23, 1998) ...................... 7

*Rosenberg v. XO Communications, Inc.*,
   30 B.R. 394 (Bankr. S.D.N.Y. 2005)........................................................ 3, 5

*Schaffer v. CC Investments, LDC*,
   286 F. Supp. 2d 279 (S.D.N.Y. 2003) ...................................................... 4, 5

*Schaffer v. Litzler*,
   No. 02-cv-6313 (AKH) (S.D.N.Y. May 5, 2006)................................................. 8

*Schaffer v. SC Fundamental Inc.*,
   No. 98 Civ. 1127 (RCC) (S.D.N.Y. filed Feb. 18, 1998) ...................................... 9

*Schaffer v. Soros*,
   No. 92 Civ. 1233, 1994 WL 381442 (S.D.N.Y. 1994).......................................... 19

*Segen v. Westcliff Capital Management, LLC*,
   299 F. Supp. 262, 267-71 (S.D.N.Y. 2004) ................................................. 14

*Simmonds v. Credit Suisse Securities (USA) LLC*,
   Nos. 09-35262 et al., 2011 U.S. App. LEXIS 974 (9th Cir. Jan. 18, 2011) .................... 4

*Strauss v. Kopp Investment*,
   No. 98-cv-7493(MP) (S.D.N.Y. Mar. 16, 1999) ............................................... 8

*Volk v. Zlotoff*, 285 F. Supp. 650 (S.D.N.Y. 1968) ........................................................................ 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................................... 10

## Statutes and Rules

15 U.S.C. § 78p(b) .................................................................................................. 1, 2, 6, 17

31 U.S.C. § 3730(b) ........................................................................................................ 6

Federal Rule of Civil Procedure 23 ........................................................................... 2, 10

## Other Authorities

Report of the Third Circuit Task Force,
    *Court Awarded Attorney's Fees*, 108 F.R.D. 237 (1985) ........................................ 18

Thomas Lee Hazen, *Law of Securities Regulation* (6th ed. Supp. 2010) ...................... 4

Peter J. Romeo & Alan L. Dye, *Section 16 Deskbook* (Spring 2011) ........................... 9

Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide* (3d ed. 2008) ............. 4

Ellen M. Ryan & Laura E. Simmons, Cornerstone Research,
    *Securities Class Action Settlements: 2011 Review and Analysis* 7 (2012) .............................. 15

**OVERVIEW**

This Memorandum of Law is an adaptation of the memorandum filed by Plaintiff in *Donoghue v. Achillion Pharmaceuticals, Inc., et al.*, No. 14 Civ. 8353 (PAC) (S.D.N.Y. filed Oct. 20, 2014), in which Judge Crotty, under similar circumstances, granted the procedural relief here sought. It relies heavily upon Your Honor's opinion in *Chechele v. Elsztain et al.*, No. 11 Civ. 3320 (SAS), a copy of which is appended as Exhibit B to the affirmation of David Lopez in support of this Motion.

This is a shareholder suit brought under Section 16(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78p(b), to recover short-swing profits on behalf and for the benefit of the Nominal Defendant, Novatel Wireless, Inc. ("Novatel" or the "Company") from the Defendant, HC2 Holdings, Inc. ("HC2"). An arms-length settlement has been reached by the parties as has agreement on the amount of legal fees to be paid to Plaintiff's counsel.

The substantive settlement provides for payment by HC2 to Novatel of $150,000. The fee agreement between Novatel and Plaintiff's counsel is for payment by Novatel to Plaintiff's counsel of $37,500. As is typical of settlements like this, HC2 has agreed to make payment without admitting liability in exchange for a release of claims from the Plaintiff and from Novatel encompassing "claims arising out of or relating to any violation of Section 16(b) of the Exchange Act … relating to Novatel securities, options to acquire Novatel securities and/or other securities or instruments the value of which is derived from or related to the value of any Novatel equity security … in Novatel securities … or derivative securities thereof" prior to March 26, 2015. (*See* Stipulation of Settlement, Lopez Aff. Ex. A ¶ 4.)

This Memorandum has four sections. Section I urges that Federal Rule of Civil Procedure 23.1 does not apply to Section 16(b) cases, and asks the Court to approve the settlement as

1

"diligently . . . prosecut[ed]," the only relevant standard under the text of the statute. Sections II and III demonstrate that even if the Court decides that Rule 23.1 applies, the Stipulation of Settlement can be approved without further notice because it easily satisfies the standards for fairness, adequacy, and reasonableness established by the Second Circuit. Section IV is an application for the award of fair and reasonable fees to Plaintiff's counsel. Accordingly, the parties respectfully ask the Court to approve their Settlement, including their agreement on attorneys' fees.

**ARGUMENT**

## I. THE COURT MUST DETERMINE THE ADEQUACY AND FAIRNESS OF THE SETTLEMENT ONLY TO THE EXTENT NECESSARY TO ENSURE DILIGENT PROSECUTION OF THE LITIGATION

A Section 16(b) suit is not a derivative action. Although "quasi-derivative" in function, the private right conferred by Section 16(b) is just that: a private right belonging to a shareholder personally. The parties submit the Stipulation of Settlement for approval in order to give the settlement preclusive effect as Section 16(b) only authorizes a securityholder to bring suit when her or his claim has not otherwise been "diligently. . . prosecute[d]." 15 U.S.C. § 78p(b). The Court should hold that the Stipulation of Settlement reflects diligent prosecution preclusive of further litigation.

### A. A Section 16(b) Suit Is Not a "Derivative Action" Within the Meaning of Rule 23.1 or Local Civil Rule 23.1.1

Federal Rule of Civil Procedure 23.1 provides that a "derivative action" may not be settled without shareholder notice and court approval. Fed. R. Civ. P. 23.1(c). Because the rule does not define the term "derivative action," this Court must decide the threshold question of whether this case is a "derivative action" within the meaning of the rule.

Many opinions casually refer to Section 16(b) suits as "derivative." *See, e.g.*, *Gryl v. Shire Pharms. Group PLC*, 298 F.3d 136, 139 (2d Cir. 2002) ("The plaintiffs filed this stockholder derivative action. . . ."). This Court has even held fairness hearings for Section 16(b) settlements under Rule 23.1. *See, e.g.*, *Donoghue v. CSX Corp.*, No. 08 Civ. 9252 (MGC), 2009 U.S. Dist. LEXIS 97086 (S.D.N.Y. Mar. 9, 2009). But none of these cases carefully considered whether a Section 16(b) suit is a "derivative action" for purposes of Rule 23.1. "It appears that references to [the] phrase 'derivative action' in these cases . . . are generally descriptive and not germane to the issues decided therein, and not a finding of the nature of a Section 16(b) cause of action for purposes of enforcement." *Rosenberg v. XO Communications, Inc.*, 330 B.R. 394, 428 n.24 (Bankr. S.D.N.Y. 2005).

The few authorities that have squarely addressed the question have uniformly concluded that a Section 16(b) case is not a "derivative action" for purposes of Rule 23.1. *See id.* ("[W]hile certain cases refer to a Section 16(b) suit as a derivative suit, any case that has analyzed the issue has 'concluded that a Section 16(b) suit is not a derivative action'" (quoting Arnold S. Jacobs, Section 16 of the Securities Exchange Act § 3:35, at 3-290 (West July 2003))). These authorities have rejected Rule 23.1(b)(1)'s contemporaneous ownership requirement. *See Blau v. Mission Corp.*, 212 F.2d 77, 79 (2d Cir. 1954). They have also dispensed with Rule 23.1(a)'s requirement of adequate representation. *See Greco v. Local.com*, 806 F. Supp. 2d 653, 658 n.1 (S.D.N.Y. 2011). Indeed, they do not require the plaintiff to be a shareholder at all. *See Gollust v. Mendell*, 501 U.S. 115, 123 (1991) ("Any security will suffice. . . ." [internal quotation marks and citation omitted]). Your Honor's opinion of August 1, 2012, in *Chechele v. Elsztain,* No. 11 Civ. 3320 (S.D.N.Y. Aug. 1, 2012), squarely on point, appears at Exhibit B to the affirmation of David Lopez in support of this Motion. The reasoning of that opinion was recently followed by Judge

3

Crotty in *Donoghue v. Achillion Pharmaceuticals et al.*, No. 14 Civil 8353 (PAC) and in *Donoghue v. Netsol et al.*, No. 14 Civ. 6383 (PAC).

The Second Circuit's opinion in *Gollust* gave perhaps the clearest rejection of Rule 23.1. The Court surveyed at some length the differences between the standing requirements of Rule 23.1 and Section 16(b). *See Mendell v. Gollust*, 909 F.2d 724, 728-29 (2d Cir. 1990). It then went out of its way to distinguish a precedent from this Court that had relied on Rule 23.1. *See id.* at 730 (discussing *Rothenberg v. United Brands Co.*, [1977-78] Fed. Sec. L. Rep. (CCH) ¶ 96,045, at 91,691-92 (S.D.N.Y.), *aff'd mem.*, 573 F.2d 1295 (2d Cir. 1977)). The Second Circuit criticized *Rothenberg* as "premised on an analogous application of Rule 23.1 which ... does not govern shareholders bringing § 16(b) claims." *Id.* The Supreme Court of the United States affirmed. *Gollust*, 501 U.S. 115.

Many authorities have joined *Gollust* in rejecting the characterization of Section 16(b) suits as "derivative actions." *See, e.g.*, *Simmonds v. Credit Suisse Secs. (USA) LLC*, Nos. 09-35262 et al., 2011 U.S. App. LEXIS 974, at *15-16 & n.7 (9th Cir. Jan. 18, 2011) ("Certain courts and commentators have suggested that Section 16(b) actions are not true derivative actions" (citing *Dottenheim v. Murchison*, 227 F.2d 737, 738 (5th Cir. 1956); *Schaffer v. CC Invs., LDC*, 286 F. Supp. 2d 279, 281-82 (S.D.N.Y. 2003); 4 Thomas Lee Hazen, Law of Securities Regulation § 13.2 n.41 (6th ed. Supp. 2010); and Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide § 9:03[1][a] (3d ed. 2008))); *see also Blau v. Oppenheim*, 250 F. Supp. 881, 885 (S.D.N.Y. 1966) ("[S]trictly speaking a section 16(b) suit to recover short-swing profits is not derivative, although some of the cases so describe it").

4

This Court in *Schaffer* thoroughly articulated the rationale for distinguishing between Section 16(b) cases and true derivative actions. As Judge Marrero explained, the two sets of suits have "some similarities" but "differ in more fundamental ways":

> First, a § 16(b) cause of action is a statutory enabling right directly empowering the shareholder to sue; it is not a derivative or secondary right grounded on rights and interests possessed primarily by the corporation and emanating from common law. In other words, the § 16(b) action amounts to an *enforcement* right that, if successful, enables the corporation to gain from the redistribution of insiders' illicit profits to which the corporation had no right of recovery under common law causes of action.
>
> Furthermore, as reflected in the plain language of the statute, § 16(b) was enacted because of the "national public interest which makes it necessary to provide for regulation and control of such transactions." By contrast, the underlying scope and purposes of the pure derivative cause of action serve broader objectives. Such an action enables the shareholder to prosecute a broader range of wrongdoing by corporate officers or agents committed against the corporation on the basis of recognized causes of action the corporation itself would have under the common law, and thereby to vindicate more extensive rights and interests on behalf of the corporation.

*Schaffer*, 286 F. Supp. 2d at 282 (original emphasis, citations omitted); *see also XO Communications*, 330 B.R. at 428 n.24 (thorough analysis of same issue, endorsing *Schaffer*).

Although *Schaffer* addressed a question of bankruptcy law, its logic applies to Rule 23.1 as well. A true derivative suit owes its life to the courts: "The stockholder's derivative action ... is an invention of equity to supply the want of an adequate remedy at law to redress breaches of fiduciary duty by corporate managers." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947). Having conceived this procedural device, the courts may employ it as they see fit, superintending it through Rule 23.1 and otherwise.

By contrast, a securityholder's right to recapture short-swing profit on behalf of a public issuer does not come from the courts. It comes from Congress, having an express statutory origin. And nothing in the text of that statute limits the securityholder's right to enforce the statute by requiring court approval of a settlement. Congress knew how to limit the right if it

wanted to, as it has done with other statutes. *See, e.g.*, 31 U.S.C. § 3730(b) (requiring an action under the False Claims Act to be "brought in the name of the Government" and "dismissed only if the court and the Attorney General give written consent to the dismissal"). Absent analogous statutory language, the approval requirement should not be grafted onto the text of Section 16(b).

**B.   The Court Should Approve the Stipulation of Settlement as "Diligent[] ... Prosecution" of the Company's Section 16(b) Rights**

Grafting Rule 23.1 onto Section 16(b) is especially unwarranted because Section 16(b) already has a mechanism for protecting the issuer's stakeholders and ensuring finality. The plain terms of the statute permit a securityholder to sue on the issuer's behalf "if the issuer shall fail or refuse to bring such suit within sixty days after request *or shall fail diligently to prosecute the same thereafter.*" 15 U.S.C. § 78p(b) (emphasis added). The issuer's execution of a settlement agreement cannot preclude follow-on litigation unless the court presiding over it concludes that the settlement agreement amounted to "diligent[] . . . prosecut[ion]" of the claim. *Cf. Lewis v. Rosenberg*, No. 120-12, 1958 U.S. Dist. LEXIS 4187, at *2 (S.D.N.Y. Apr. 11, 1958) (explaining that stockholder intervention under Section 16(b) is permissible, notwithstanding noncompliance with then-Rule 23(b), if "the corporation has failed diligently to prosecute its claim"). Since the statute already has a homologous "fairness" standard — diligent prosecution — there is no need to saddle Section 16 with the judicially crafted standards of Rule 23.1.

The parties have submitted the Stipulation of Settlement for approval to ensure that the diligent prosecution standard is satisfied. If the Court adjudges that the settlement culminates a "diligent[] . . . prosecut[ion]" of this Section 16(b) claim, then the Court's judgment will be *res judicata* preclusive of further litigation. The preclusive effect is not because of anything in Rule 23.1 (which applies only to true "derivative action[s]"), but because a securityholder has no right to relitigate a Section 16(b) claim that has already been "diligently prosecute[d]." *See Volk*

*v. Zlotoff*, 285 F. Supp. 650, 657 (S.D.N.Y. 1968) ("The settlement by a corporation of a Section 16(b) claim against an insider for an inadequate amount will not preclude an action by a shareholder."); *Lewis*, 1958 U.S. Dist. LEXIS 4187, at *2.

The term "diligent prosecution" implies that the Court's inquiry should focus on the process leading to settlement rather than the substantive settlement terms. That approach dovetails well with the statutory text, with this Court's precedent on reopening Section 16(b) litigation, and even with the Court's analogous precedent under Rule 23.1. *See Local.com*, 806 F. Supp. 2d at 659 (finding Section 16(b) judgment preclusive of subsequent litigation because prior litigant had "vigorously prosecuted her claim . . . throughout the litigation"); *id.* at 658-59 & n.1 (observing that vigorous prosecution is a hallmark of adequate representation under Rule 23.1, while recognizing that Rule 23.1 is not "directly applicable" to Section 16(b) (internal quotation marks omitted). As discussed *infra* in Section III.A, the parties' settlement — negotiated at arm's length — satisfies that standard.

## II.    SHAREHOLDER NOTICE OF THE PROPOSED SETTLEMENT AGREEMENT IS NOT NECESSARY UNDER THE CIRCUMSTANCES OF THIS CASE

### A.    Notice is Not Required Under *Rosen v. Price* and Precedents Decided Post-*Rosen*

While this Court has previously held that a Section 16(b) case is not a "derivative action" for purposes of Rule 23.1, the Court may avoid that question and still hold that notice is not required in this case. In *Rosen v. Price*, No. 95 Civ. 5089 (CSH), 1998 U.S. Dist. LEXIS 9198, at *3 (S.D.N.Y. June 23, 1998), the Court was asked to approve a Section 16(b) settlement. It started its analysis with the premise that because the lawsuit was "a derivative action by a shareholder, it falls under Rule 23.1." *Id.* at *1-*2. But the Court went on to express doubt over whether Rule 23.1 applies to Section 16(b) cases, *id.* at *3, observed that other courts in the Southern District of New York had "dispensed with the giving of notice under Rule 23.1" in

Section 16(b) cases, *id.* (citing *Plaskow v. Peabody Int'l Corp.*, 95 F.R.D. 297, 299 (S.D.N.Y. 1982) (in turn citing *Blau v. Berkeley & Berkeley Photo, Inc.*, CCH Fed. Sec. L. Rep. ¶ 92,264 (1967-1969 Decisions) (S.D.N.Y. 1968)), and held that dispensing with notice was appropriate under the circumstances, *id.* at *3-*4. *Rosen* did not require shareholder notice because it determined that the interests of the issuer's shareholders would "not be substantially affected by the [settlement]." *Id.* at *3.

The Court's docket shows that approval of settlements without shareholder notice is unexceptional. Since *Rosen*, the Court has approved the compromise or voluntary dismissal of at least seven Section 16(b) cases without notice to shareholders.[1] Quite recently, Judge Crotty, in *Donoghue v. Achillion Pharmaceuticals,* No. 14 Civil 8353 (PAC)(S.D.N.Y.) approved a settlement of $10.4 million and attorneys' fees of $1.45 million without requiring shareholder notice and without a hearing. As Plaintiff's counsel found these cases by searching the dockets (or by prosecuting the cases themselves) in matters for which opinions have been publicly reported, that number probably understates significantly the true number of such dispositions. Many Section 16(b) cases involve small amounts and are settled within a few months without any reported opinion. *See, e.g.*, Stipulation of Dismissal [Doc. No. 12], *Donoghue v. FutureFuel Corp.*, No. 11-cv-5515 (PGG) (S.D.N.Y. Oct. 18, 2011) (approving  16(b) settlement without

---

[1]      *See, e.g.*, Stipulation and Order of Dismissal with Prejudice, *Goldstein v. QVT Assocs. GP LLC,* No. 10-cv-2488 (HB)(AJP) (S.D.N.Y. Feb. 3, 2011); Stipulation and Order of Dismissal [Doc. No. 30], *Donoghue v. Golden State Bancorp.,* No. 02-cv-2404 (TPG) (S.D.N.Y. Aug. 4, 2006); Mandate Withdrawing Appeal, *Schaffer v. Litzler*, No. 02-cv-6313 (AKH) (S.D.N.Y., May 5, 2006) ("[T]he appeal is hereby withdrawn pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure ...."); Notice of Voluntary Dismissal [Doc. No. 18], *Morales v. Auspex Sys., Inc.,* No. 00-cv-1173 (KMW) (S.D.N.Y., June 6, 2001); Notice of Voluntary Dismissal [Doc. No. 32], *Morales v. Adept Tech. Inc.*, No. 00-cv-957 (LMM) (S.D.N.Y. May 29, 2001); Stipulation and Order of Voluntary Dismissal [Doc. No. 23], *Strauss v. Kopp Inv.*, No. 98-cv-7493 (MP) (S.D.N.Y.) Mar. 16, 1999); Order and Final Judgment [Doc. No. 63].

notice or hearing after less than three months of litigation). The number of such dispositions probably outweighs by far the number of settlements subjected to the full notice and approval process.

This Court should conclude that notice to the Company's shareholders is not required, just as other judges in this District have concluded. *Cf. Schaffer v. SC Fundamental Inc.*, No. 98 Civ. 1127 (RCC) [Docket Nos. 13 and 14] (S.D.N.Y. filed Feb. 18, 1998) (approving 16(b) settlement involving disgorgement of $850,000 and a fee of $283,333 without requiring shareholder notice); *see also Morales v. New Valley Corp.*, No. 95 Civ. 1246 (CSH), Docket No. 85 (S.D.N.Y. Mar. 16, 1999) ("In the circumstances of this case, notice to shareholders will not be required in this application for attorneys' fees [of $525,000], also, no such hearing or notice as set forth in Local Rule 23.1 is required in this application"). The Court should exercise its discretion to dispense with notice, *cf. Access Now, Inc. v. AMH CGH, Inc.*, No. 98-3004-CIV, 2001 U.S. Dist. LEXIS 12876, at *21-*22 (S.D. Fla. May 8, 2001) (citing *Rosen* and dispensing with notice in a class action); Peter J. Romeo & Alan L. Dye, *Section 16 Deskbook* at 418-19 (Spring 2011) (discussing *Rosen*).

### B.     Dispensing With Shareholder Notice Is Discretionary

Dispensing with shareholder notice is consistent with the text of Rule 23.1(c), which requires that "[n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members *in the manner that the court orders*" (emphasis added). Courts have held that Fed. R. Civ. P. 23(e)'s similar language — requiring notice "in such manner as the court directs" — is "'sufficiently flexible' to permit a court 'to determine that no notice at all is required.'" *Access Now*, 2001 U.S. Dist. LEXIS 12876, at *21 (quoting *Larkin Gen. Hosp. v. Am. Tel. & Tel. Co.*, 93 F.R.D. 497, 502 (E.D. Pa. 1982), and citing *Doe v. Perales*, 782 F. Supp. 201, 206 (W.D.N.Y. 1991)); *see also Green v. Am. Express Co.*, 200 F.R.D. 211, 212 & n.1

9

(S.D.N.Y. 2001) (discussing circumstances in which notice under Rule 23(e) is unnecessary). If a court may, under appropriate circumstances, dispense with notice of a settlement to certified class members under Rule 23, and dispense with notice of the settlement of a derivative action to corporate shareholders under Rule 23.1(c), then perforce this Court has the discretion and flexibility to dispense with notice to shareholders with respect to the settlement of an action under Section 16(b), especially since Section 16(b) does not contain any express notice requirement similar to the ones found in Rules 23 or 23.1.

## III.   ASSUMING THE *GRINNELL* FACTORS APPLY, THEY SUPPORT THE FAIRNESS, ADEQUACY, AND REASONABLENESS OF THE SETTLEMENT

The Stipulation of Settlement would satisfy the criteria for approval of a settlement even if the litigation were subject to Rule 23.1. Rule 23 provides that a class action may not be settled unless the court finds the settlement "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In *City of Detroit v. Grinnell Corp.*, the Second Circuit described the factors a court should consider in making this determination:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re IPO Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009) (Scheindlin, J.) (quoting the *Grinnell* factors).

In addition to the factors listed above, the *Grinnell* inquiry has a separate but related procedural component, which looks to "the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also Polar Int'l Brokerage*

*Corp. v. Reeve*, 187 F.R.D. 108, 112 (S.D.N.Y. 1999) (Scheindlin, J.) (referring to this as the "second prong" of the analysis). The Court should satisfy itself that negotiations were "conducted at arm's length, and [that] class counsel have engaged in sufficient discovery of the claims." *Id.*, 187 F.R.D. at 118; *see also Grinnell*, 495 F.2d at 465-66 (evaluating the procedural fairness and adequacy of settlement negotiations). "'A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *In re IPO Sec. Litig.*, 260 F.R.D. at 87 (quoting *Wal-Mart Stores*, 396 F.3d at 116).

Although the *Grinnell* factors are geared toward class action settlements, this Court has applied them to a handful of cases under Section 16(b). In so doing, the Court has modified the factors in two respects. First, the Court has eliminated the sixth factor, which relates to the risk of maintaining the class action through the trial. *See, e.g.*, *FTR Consulting Grp. v. Soin*, No. 1:05-cv-00008-JJF-LPS, 2005 U.S. Dist. LEXIS 20013, at *6-7 & n.2 (D. Del. 2005). Second, the Court has fashioned an additional factor, which looks to "the congressional purpose to cause disgorgement of short-swing trading profits by corporate insiders in favor of the corporation of which they are fiduciaries." *Id.* at *7 (quoting *GE Capital*, 2001 U.S. Dist. LEXIS 13099, at *18-*19).

In applying the *Grinnell* factors, the Court should remain mindful that "[p]ublic policy, of course, favors settlement." *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260, at *7 (S.D.N.Y. Sept. 6, 2006) (citing *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 291 (S.D.N.Y. 1996)); *see also In re IPO Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) (Scheindlin, J.) ("[I]t is axiomatic that the law encourages settlement of disputes") (quoting *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129 (2d Cir.

2001) (alteration added)). Thus, while the Court should conduct an "'independent evaluation'" of the parties' settlement, it must "'stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case.'" *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 329 & n.72 (S.D.N.Y. 2005) (Scheindlin, J.) (quoting *Grinnell*, 495 F.2d at 462); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575-76 (S.D.N.Y. 2008) ("[T]he court should not substitute its judgment for those of the parties who negotiated the settlement . . . .").

### A.   The Negotiating Process Entitles the Stipulation of Settlement to a Presumption of Fairness, Adequacy, and Reasonableness

The parties' settlement easily satisfies the procedural component of the *Grinnell* analysis. The parties have been engaged in negotiations since Plaintiff's initial demand in March of 2015. Informal discovery has fleshed out the facts sufficiently to allow knowledgeable settlement discussions.

This case displays zealous prosecution and zealous defense, but a display of pragmatic compromise. Counsel bargained hard for their client and agreed to settle only after satisfying themselves of the legal and factual risks of litigation.

HC2 and Novatel are represented respectively by Latham & Watkins, and Paul Hastings, firms well-known and certainly well-reputed. The qualifications and reputation of David Lopez, appearing for plaintiffs in Section 16(b) litigation, are reported in the Fourth Edition of Romeo and Dye, *Section 16 Treatise* at pages 870-871. Of Plaintiff's other attorneys, Ronald Tauber is a former partner of Stroock & Stroock & Lavan and of Goldman Sachs, is a graduate of Harvard Law School and is particularly knowledgeable in the workings of capital markets. Miriam Tauber is a graduate of The University of Pennsylvania School of Law and a former senior litigation associate at Skadden Arps Slate Meagher & Flom, who has appeared in many short-swing trading cases.

Both sides were ably represented by attorneys who are among the foremost in the specialized field of short-swing trading, who analyzed and bargained to the peak of their abilities and responsibilities.

**B.  The Terms of the Settlement
Agreement Satisfy the Substantive *Grinnell* Factors**

**1.  *Grinnell* Factor One:
The Complexity, Expense, and Likely Duration of Litigation**

All counsel vouch for the complexity of the legal and factual issues presented by the case. Counsel likewise believe the case could prove expensive (relative to the total possible recovery) and of somewhat long duration.

Plaintiff's Complaint presents his best case. If all disputed issues were uniformly decided in his favor the maximum amount at issue is roughly $500,000. Determining whether, by trial or by dispositive motion, those views would carry the day is a question that cannot be answered short of court decision and appeal.

**2.  *Grinnell* Factor Three:
The Stage of the Proceedings and Extent of Discovery**

"This factor is aimed at ensuring that the parties have a 'thorough understanding of their case' prior to settlement." *In re IPO Sec. Litig.*, 260 F.R.D. at 114 (Scheindlin, J.) (quoting *Wal-Mart Stores*, 396 F.3d at 118). The amount of discovery necessary to assess a case depends on how fact-dependent it is, so the Courts have refused to fix a hard threshold for acceptable discovery. To the contrary, they have said repeatedly that a *Grinnell*-compliant settlement can occur even before formal discovery has begun. *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS 86513, at *35 (S.D.N.Y. June 20, 2012); *see also In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS

36093, at *20 (S.D.N.Y. May 1, 2008) (collecting cases). The courts ask only for "a record sufficient to permit evaluation of the merits of Plaintiff's claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiff's causes of action for purposes of settlement." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).

Many of the facts relevant to liability and short swing profits under Section 16(b) are likely to involve disputed factual issues, in addition to the potential for debate about the relevancy and application of valuation methodologies, including by expert analysis. There are factual questions regarding the value of the non-cash consideration paid for the shares and warrants sold by HC2 in the privately negotiated transaction on February 4, 2015, as reported on a Form 4 filed by HC2 and alleged in Plaintiff's Complaint. (Compl., Dkt. 1 ¶ 10), and questions regarding the allocation of the price paid for the warrants and stock in the alleged sale and the alleged purchase. There are also questions about whether HC2's asserted "deputization" defense can be upheld as a matter of fact or law, given the ambiguities created by prior contractual restrictions on director "deputization."

Though these uncertainties call the probability and amount of potential recovery into question, the parties agree that Defendant has some risk of exposure, up to a potential maximum liability of roughly $500,000 in this case, as calculated in accordance with SEC rules designed to encourage and facilitate disgorgement under the strict statutory framework. Under SEC Rule 16b-6(c)(2), 17 C.F.R. § 240.16b-6(c)(2), maximum short swing profits are calculated by reference to the market price of the underlying stock on the dates of the alleged purchase and sale – a rule that the SEC adopted for ease of reference and to avoid debates about "option valuation" and turning the case into a "battle of the experts." *Segen v. Westcliff Capital Mgmt., LLC*, 299 F. Supp. 262, 267-71 (S.D.N.Y. 2004) (internal citations omitted). This rationale and

14

the strict liability policy of the statute have guided the parties' decision to compromise the maximum liability in this case, taking into consideration the issues of fact and law that will have to be resolved for liability under Section 16(b) to be negated by exemption or for short swing profits to be reduced below the maximum potentially recoverable amount.

### 3. *Grinnell* Factors Four and Five: The Risks of Establishing Liability and Damages

Liability, in Plaintiff's judgment, is at the heart of the need to compromise. HC2 has indicated that a critical aspect of its defense in this matter is the availability of the 'safe harbor' under Rule 16b-3, which provides that certain insider transactions directly with the issuer are exempt from liability under Section 16(b). If the defense can establish that HC2 is a director by deputization, there is no case.

At the same time, Plaintiff may contend that this defense is inapplicable here. HC2 had and has an agreement with Novatel to appoint two directors to Novatel's board in connection with a loan to the company and an acquisition of warrants. That agreement, however, provided for a several-months long waiting period during which HC2 was not to exercise its warrants to acquire stock above a threshold which would trigger deputization rights. During that waiting period, HC2 was provided with the right to appoint "board observers," a level of influence which Plaintiff contends does not bring HC2 within the ambit of SEC Rule 16b-3. *See* 17 C.F.R. § 240.16b-3. However, prior to the end of the waiting period, two employees of HC2 were in fact appointed to the board of Novatel.

The issue is the scope and consequences of these actions; and, more specifically, their impact (and that of any associated contested issues of fact and/or contract interpretation) on the availability of a deputization exemption under Section 16(b) and applicable SEC Rules. *Cf.*

*Dreiling v. Am. Express Co.*, 458 F.3d 942, 945 (9th Cir. 2006) ("an undisclosed director by deputization is not entitled to the protection of the Rule" 16b-3 exemption).

Assuming the failure of any purported Rule 16b-3 exemption, actual short swing profits may prove difficult to calculate, as the relevant "price" of the components of the alleged sale and the alleged purchase are subject to dispute. The sale price of the options and warrants, which dictates the actual maximum potential short swing profit realized by HC2, is uncertain. HC2 reported a total sale price of $1,025,666.17 for both the stock and warrants – reflecting a significant unexplained discount from the Novatel (closing) market price of $5.12 per share. Additionally, the allocation of the sale price and the purchase price among the stock and derivative securities purchased and sold is unclear. These variables could significantly impact the calculation of actual maximum short swing profits.

SEC Rule 16b-6(c)(2) resolves the uncertainty created by these and other factual questions by providing a maximum potential liability of roughly $500,000 in this case. The disparity between the "best-case estimate" of $500,000 provided by the Rule and the settlement amount of $150,000 reflects a pragmatic attempt to bridge the gap between the views of the parties.

Further development of the case (beyond the significant informal work already done) would include written discovery and extensive oral discovery, which could prove in the end to be less than conclusive. To attempt to resolve these facts will require no less than an extended exploration of fact and potentially expert witnesses and bringing the case to trial. The parties submit that settlement is a better way.

    **4.**    ***Grinnell* Factors Eight and Nine: The Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation**

The proposed recovery of $150,000 amounts to approximately 33.33% of the maximum recoverable short-swing profits sought in the Complaint, a yeoman-like achievement by the standards of securities litigation. In its most recent survey, Cornerstone Research found that, in cases with estimated damages of less than $50 million (the lowest range for which Cornerstone disaggregates data), the median settlement recovered only 10.3% of estimated damages.[2] When all cases are considered, that figure falls to 2.1%. *See id.* Cornerstone's sample is limited to securities fraud cases, *see id.* at 21, which offer defenses not available under the strict liability of Section 16(b). Still, the stark difference between the percentage recovery in this case and in securities litigation generally implies that the Settlement Agreement at least falls within the "range of reasonableness."

    **5.**    ***Grinnell* Factor Seven: The Ability of the Defendants to Withstand a Greater Judgment**

The Company stands to recover at most $500,000 from HC2 in this case on Plaintiff's most optimistic hopes. HC2 could likely weather that liability. But the size of Defendant's wallets is not a measure in this case of what may reasonably be sought by Plaintiff. The case's validity is the true measure of what is reasonably due once the solvency of the defendant is out of the picture. Ability to pay is not and was not a consideration in the settlement agreed in this case.

---

[2] *See* Ellen M. Ryan & Laura E. Simmons, Cornerstone Research, Securities Class Action Settlements:  2011 Review and Analysis 7 (2012), *available at* http://www.cornerstone.com/ files/Publications/a0e54ba8-2830-4cc00-9481108208ec4ed8/Presentations/Publication Attachment/f03e4174-ec8a-4eb3-ba22-19bd5162f09e/Cornerstone_Research_Settlements_ 2011_Analysis.pdf; *see also In re Veeco Instruments Sec. Litig.* No. 05 M.D. La. 1695 (CM), 2007 U.S. Dist. LEXIS 85629, at *34-35 (S.D.N.Y. Nov. 7, 2007).

6.    **The Congressional Purpose to Cause
Disgorgement of Short-Swing Trading Profits**

This factor only applies to Section 16(b) settlements. The courts added it to the mix in *Levy v. GE Capital Corp.*, No. 99 Civ. 10560 (AKH), 2001 U.S. Dist. LEXIS 13099, at *18-*19 (S.D.N.Y. Aug. 30, 2001). Judge Hellerstein, who wrote the opinion in *GE Capital*, did not explain how to apply this factor, though he described it as having "considerable importance." *Id.* at *18. His opinion suggests that the court was concerned about settlements (including the one before him) that provided only non-pecuniary benefits. *See, e.g.*, *id.* at *24 (rejecting the "intangible values" of the settlement, and opining that "That view makes sense given the congressional purpose behind Section 16(b) of preventing the unfair use of information which may have been obtained by [an insider] by reason of relationship to the issuer … [t]he settlement proffered to me has not been shown to create one dollar of real value"). This deterrent would be disserved if insiders could disgorge short-swing profit in the form of "coupons" or similar non-pecuniary assets. Even if the issuer's stakeholders were happy to receive coupons, cashless disgorgement would soften the blow to the defendant and reduce the statute's deterrent effect.

That is not a concern with the settlement negotiated by the parties here. Unlike the deal in *GE Capital*, the Stipulation of Settlement gives the issuer the most real and tangible of benefits: cash. Moreover, Plaintiff's attorneys are not taking "better care of [themselves] . . . than those [they] represent[]." *GE Capital*, 2001 U.S. Dist. LEXIS, at *26 n.16. The agreement provides that attorneys' fees are paid only at the time of payment of the disgorgement. These terms satisfy the deterrent purpose of the statute, and they militate in favor of approving the settlement.

IV.   **THE LEGAL FEES AND DISBURSEMENTS
AGREED TO ARE FAIR AND REASONABLE**

Novatel has agreed that Plaintiff's counsel, who discovered this case and investigated and litigated it on a contingent basis, have provided a real and measurable benefit to the Company

which has resulted in a proposed payment of $150,000. In negotiations conducted after settlement, Novatel agreed to support Plaintiff's requested counsel fees of $37,500, which include disbursements (other than the cost of shareholder notice should that be required). That amount is 25% of the recovery. It is well within the range of fees routinely awarded in common fund cases in this Circuit and elsewhere. *See In re Warner Communications Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) (Keenan, J.) (noting that fee awards in this district and others are generally between 20% and 50% of the common fund).[3]

### A. The Agreement Between Plaintiff's Counsel and Defendants Should Be Given Great Deference

The arms-length negotiation of Plaintiff's fees after settlement was a common sense attempt to have the persons closest in knowledge to the proceedings attempt to resolve this last aspect of the case. The Second Circuit has cautioned that courts should be hesitant to interfere in fee arrangements between plaintiffs and defendants in shareholder actions when defendants have agreed not to oppose – or by extension, agreed to support – the payment of stipulated fees:

> "[W]here ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to the completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after settlement."

---

[3] 15 U.S.C. § 78p(b). A small sampling of fee decisions in the district includes: *Krome v. Merrill Lynch & Co.*, 85 Civ. 765 (DNE) (S.D.N.Y. May 7, 1991) (Edelstein, J.) (33%); *In re Gulf Oil/Cities Service Tender Offer Litig.*, 142 F.R.D. 588 (S.D.N.Y. 1992) (court awarded 30% of a $34 million settlement fund finding the fee requested to be "eminently reasonable"); *In re Allister Inns Sec. Litig.*, 88 Civ. 9282 (PKL) 1299I U.S. Dist. LEXIS 20402 (S.D.N.Y. Nov. 20, 1991) (Leisure, J.) (35%); *Bello v. Integrated Resources, Inc.*, [1990-1991 Transfer Binder] Fed. Sec. L. Rep (CCH) Par. 95,731 (S.D.N.Y. 1990) (Haight, J.) (30%); *In re N.Y. City Mun. Sec. Litig.*, [1984 Transfer Binder] Fed. Sec. L. Rep (CCH) ¶ 91,419 (S.D.N.Y. 1984) (Owen, J.) (30%); *Schaffer v. Soros*, No. 92 Civ. 1233, 1994 WL 381442 (S.D.N.Y. 1994) (McKenna, J.) (awarding 33 1/3 of 7.9 million settlement of a Section 16(b) case); *Adair v . Bristol Tech. Sys., Inc.*, 97 Civ. 5874 (S.D.N.Y. order dated Nov. 12, 1999) (Sweet, J.) (33.33% of $975,000 settlement).

*Malchman v. Davis*, 761 F.2d 891, 905 n. 5 (2d Cir. 1985); *see also Court Awarded Attorney's Fees,* Report of the Third Circuit Task Force, 108 F.R.D. 237, 267 (1985) (cited in *Evans v. Jeff D.,* 475 U.S. 717, 738 n. 28 (1986); *In re Quest Software, Inc. Deriv. Litig.* No. SACV06-763, Order Granting Final approval of Settlement, at 6 (C.D. Cal, Aug. 15, 2008) ("... a stipulated fee is entitled to considerable deference" and "judicial meddling in stipulated fee agreements is dangerous and discourages settlements").

Novatel goes beyond "not opposing" the requested fee. It has stipulated to "support" this application (Stipulation ¶ 9).

### B.  Applicable Standards

A request for attorneys' fees in a successful shareholder suit is assessed by applying a handful of factors, unevenly weighted as circumstances warrant.

### 1.  Benefit Conferred

Of all factors relevant, Plaintiff urges that the benefit conferred – objectively measurable in this case by dollars – weighs most heavily in a case like this, which is solely about the recovery of money damages in a windfall setting. Novatel suffered no actual damage for which it is being compensated. Rather, as in all Section 16(b) cases, the Company is the gratuitous recipient of a statutory forfeiture intended to protect the integrity of the marketplace for publicly traded securities. This is found money and the Plaintiff is the finder. "The most important factor in determining the reasonableness of a fee is the degree of success obtained." *Pino v. Pocasio*, 101 F.3d 285 (2d Cir. 1996).

The settlement provides for a recovery from HC2 of $150,000. It is all cash. There are no difficult-to-value assets, no coupons, no rights or intangibles whose worth are matters for subjective evaluation.

Attorney's fees in this case have been agreed to through the arms-length negotiation of a fixed percentage fee of the agreed-upon settlement amount. The dollar amount of the attorney's fees is also within the "custom and practice" of the District.

### 2.   Contingent Nature of the Fee and Risks of Litigation

The contingent nature of the fee, and Plaintiff's counsel having undertaken the risk of being left empty-handed at the end of litigation, is a significant factor in assessing this application. "Perhaps the foremost of [all] factors is the attorney's 'risk of litigation,' i.e. the fact that despite the most vigorous and competent efforts, success is never guaranteed," *Grinnell*, 495 F.2d at 471; *see also In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 226, 236 (2d Cir. 1987). "[A] multiplier takes into account the realities of legal practice by rewarding counsel for those successful cases in which the probability of success was slight yet the time invested in the case was substantial."

Diversion into thoughts expressed by the New York State Court of Appeals, not as controlling precedent, but as a common sense discussion of the topic, may illuminate. In *Graubard v. Miller,* N.Y. 3d 588 (2008), that Court wrote:

> "[It] is not unconscionable for an attorney [retained on contingency] to recover much more than he or she could possible have earned at an hourly rate [and if] courts become too preoccupied with the ratio of fees to hours, contingency fee lawyers may run up hours just to justify their fees, or may lose interest in getting the largest possible recoveries for their clients." *Id.* at 596 n.4.

The risks of this litigation are exemplified by the initial views of Novatel that the case could prove overly expensive and ultimately unsuccessful. It took the development of the case to realign its thinking.

### 3.   Magnitude and Complexity of the Action

In order to avoid redundancy, Plaintiff respectfully refers the Court to the earlier discussion regarding the complexity and magnitude of the case.

### 4.   Quality of Representation

Quality of representation, which is another way of saying the demonstrated competence of counsel, is a salient consideration. *Grinnell,* 495 F.2d at 471; *Union Carbide,* 724 F. Supp. at 163.

Romeo and Dye, in their *Section 16 Treatise,* their *Section 16 Handbook,* in their newsletter and in their lectures, have described David Lopez, from time to time, as "pre-eminent in the field." Mr. Lopez is an honors graduate of Cornell University (1963) and of Columbia Law School (1966), and has litigated shareholder suits as a member of the bar of this Court since 1970. He is a member, in addition, of the bar of the State of New York, of U.S. District Courts for the Eastern, Western and Northern Districts of New York and of the Districts of Vermont and Colorado, and has been admitted *pro hac vice* to the bars of approximately 25 U.S district courts. Mr. Lopez is a member of the bars of the First, Second, Third, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuits, and of the Supreme Court of the United States.

As earlier stated, Ronald Tauber and Miriam Tauber are graduates of Harvard and the University of Pennsylvania law schools, respectively, and each is formerly affiliated with distinguished law firms.

The celerity with which this case has progressed from demand to suit to the settlement now before the court speaks volumes for the clarity of the analysis of Plaintiff's counsel.

Plaintiff's counsel submit that their competence has met the test of adequacy.

### 5.   The Lodestar Approach

This is a case in which the so-called "lodestar" hours expended multiplied by hourly billing rates produces a lodestar a figure of $62,695. "The critical inquiry when reviewing hours billed to the common fund ... is whether the work performed resulted in a benefit ...." *Agent Orange Prod. Liab.*, 818 F.2d at 237. In negotiating the settlement, this "critical inquiry" was foremost in our minds.

In *Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992), Judge Posner reversed the trial court's *lodestar* award and criticized the judicial attempt to set a value on lawyer services mechanistically:

> "It is apparent what the district judge's mistake was. He thought he knew the value of the class lawyer's legal services better than the market did .... He may have been right in some ethical or philosophical sense of 'value' but it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Id*. at 568.

It is inappropriate "to determine the value of a service that the market has set its own value on" by reference to hourly rates, and it is error not to award a premium "in order to reflect the risky character" of a representative action. *Id.* at 569. The virtue of negotiation of a fair fee by the paying party and the receiving party is that "[m]arkets know market values better than judges do." *Id.* at 570.

The requested fee has, indeed, been set by the market, a market consisting of Novatel as sole purchaser of services in the circumstances. Represented by a prominent, well-reputed and prestigious law firm, Novatel has struck a bargain with Plaintiff's counsel after careful and adversarial negotiations, informed by the familiarity of Novatel's counsel with all case events.

The 95.5 hours expended by Plaintiff's counsel multiplied by their non-contingent hourly rates, ranging from $500 to $850, yield a so-called *lodestar* of $62,695. The agreed fee is roughly 60% of the *lodestar.*

### 6.  Public Policy

The statute under which this suit has been brought is an expression of a public policy against short-swing trading and the possible use of inside information to trade against a less-well-informed public. It has withstood, in the words of Professor Louis Loss, "a hearty detestation" among those of the sporting gentry subject to it for the 81 years of its existence.

The Congress has revisited the statute's utility and method of enforcement several times during its lifetime, aided by SEC studies and recommendations, and each time it has ratified it through tweaking and expansion, not by repeal.

This action is based on the law. It is clearly within it. It is brought in the manner and for the purposes Congress intended. And it advances the public policy that the statute was intended to embody.

## CONCLUSION

The settlement before the Court is a compromise resolution of a case in which liability is open to genuine dispute. It has been resolved through exploration and negotiation by experienced practitioners collegially and without acrimony. It is fully supported by Novatel, the beneficiary of Plaintiff's efforts. The settlement should be approved and the agreed fees awarded.


Dated:  November 30, 2015
        Southampton, New York


                                          */s/ David Lopez*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2015, I caused a true and correct copy of the

foregoing Memorandum of Law in Support of Settlement Approval and Attorneys' Fee Award to

be served on each person who has appeared as counsel by filing the same through the Court's

CM/ECF system.

Dated: November 30, 2015
       Southampton, New York

*David Lopez*