# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

DONNA ANN GABRIELE CHECHELE,

        Plaintiff,

  - against -

EDUARDO S. ELSZTAIN;
CONSULTORES ASSETS
MANAGEMENT S.A.; CONSULTORES
VENTURE CAPITAL URUGUAY S.A.;
AGROINVESTMENT S.A.;
CONSULTORES VENTURE CAPITAL
LIMITED; IFIS LIMITED; INVERSIONES
FINANCIERAS DEL SUR S.A.; CRESUD
SOCIEDAD ANONIMA COMERCIAL
INMOBILIARIA; FINANCIERA Y
AGROPECUARIA; AGROLOGY S.A.;
IRSA INVERSIONES Y
REPRESENTACIONES SOCIEDAD
ANONIMA; TYRUS S.A.; JIWIN S.A.;
IDALGIR S.A.; REAL ESTATE
INVESTMENT GROUP L.P.; REAL
ESTATE INVESTMENT GROUP II L.P.;
and REAL ESTATE INVESTMENT
GROUP III L.P.,

        Defendants,

  - and -

HERSHA HOSPITALITY TRUST,

        Nominal Defendant.
------------------------------------------------------------------- X

**ORDER**

11 Civ. 3320 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/1/12

SHIRA A. SCHEINDLIN, U.S.D.J.:

The parties have submitted a Joint Memorandum of Law in Support of Settlement Approval ("Settlement Mem."), asking this Court to approve a Settlement Agreement, between and amongst them, dated June 28, 2012 ("Settlement Agreement"). The Settlement Agreement resolves a case brought under section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)").[1] The Settlement Agreement provides for total cash payments to Hersha Hospitality Trust (the "Company") of $450,000, from which the Company has agreed to pay attorneys' fees of $150,000, inclusive of all fees, costs, and disbursements paid by plaintiff's counsel.[2] The parties submitted the Settlement Agreement for Court

---

[1] Section 16(b) is codified at 15 U.S.C. § 78p(b), which provides:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, . . . within any period of less than six months, . . . shall inure to and be recoverable by the issuer, . . . . Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or *shall fail diligently to prosecute the same thereafter*; but no such suit shall be brought more than two years after the date such profit was realized.

(emphasis added).

[2] *See* Settlement Mem. at 1.

approval "not because the law requires it but because approval is necessary to give the settlement preclusive effect, as Section 16(b) only authorizes a security holder to bring suit when her claim has not otherwise been 'diligently . . . prosecute[d].'"[3] The core issue is whether this Section 16(b) case is a "derivative action" subject to the requirements of Federal Rules of Civil Procedure 23 and 23.1 (hereafter "Rule 23" and "Rule 23.1").[4]

"While the Second Circuit has used the term 'derivative' to describe a Section 16(b) action . . . the Second Circuit has not specifically reviewed the application of the derivative action concepts to a Section 16(b) cause of action to determine the nature of the action as an 'enforcement right.'"[5] "It appears that

---

[3] *Id.* at 2 (quoting 15 U.S.C. § 78p(b), alteration in original). According to the parties, "[t]he issuer's execution of a settlement cannot preclude follow-on litigation unless the court presiding over it concludes that the settlement agreement amounted to 'diligent prosecution' of the claim." *Id.* at 5 (alterations and ellipsis omitted).

[4] Rule 23.1 states, in relevant part, as follows: "A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c).

[5] *In re XO Commc'ns, Inc.*, 330 B.R. 394, 424 n.24 (Bankr. S.D.N.Y. 2005), which cites the following quoted cases: "*Egghead.Com, Inc. v. Brookhaven Capital Mgmt. Co.*, 340 F.3d 79, 80 (2d Cir.2003) ('The [Section 16(b)] suit was brought by a stockholder of Egghead.com, Inc . . . . as a derivative action for the benefit of the corporation . . . .'), *Steel Partners II, L.P. v. Bell Indus., Inc.*, 315 F.3d 120, 123 (2d Cir. 2002) ('The issuing corporation or, derivatively, a

3

references to phrase 'derivative action' in these cases, as in the circuit cases cited above, are generally descriptive and not germane to the issues decided therein, and not a finding, in any event, as to the nature of a Section 16(b) cause of action for purposes of enforcement."[6] "However, the Second Circuit has recognized that '[t]he standing requirements for shareholder derivative suits' under Rule 23.1 of the Federal Rules of Civil Procedure 'are not applicable to a [Section] 16(b) plaintiff.'"[7]

---

shareholder is entitled to maintain [a Section 16(b)] action seeking to have the profit disgorged to the corporation.'), *Gryl v. Shire Pharm. Group PLC*, 298 F.3d 136, 139 (2d Cir. 2002) ('This derivative suit is actionable pursuant to Section 16(b) . . . .'), *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 11 (2d Cir. 2001) (noting that a shareholder of the issuer brought a 'shareholder derivative action' pursuant to Section 16(b)), *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) ('Morales, a Quintel shareholder, brought this shareholder derivative suit pursuant to [Section] 16(b) . . . .'), *Feder v. Frost*, 220 F.3d 29, 30 (2d Cir. 2000) (noting that a shareholder of the issuer 'brought the [Section 16(b)] suit derivatively on its behalf[]'), and *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 307–08 (2d Cir. 1998) (noting that the plaintiff security holder 'filed a derivative action' and that a Section 16(b) cause of action 'can be maintained either by the company or derivatively by a shareholder[]'), and [the Second Circuit] has observed in *Magida v. Cont'l Can Co.*, 231 F.2d 843 (2d Cir. 1956), that '[t]he action under [Section] 16(b) is derivative in the sense that the corporation is the instrument . . .,' *id.* at 846 . . . . However, the Second Circuit has recognized that '[t]he standing requirements for shareholder derivative suits' under Rule 23.1 of the Federal Rules of Civil Procedure 'are not applicable to a [Section] 16(b) plaintiff.' *Mendell v. Gollust*, 909 F.2d 724, 728 (2d Cir. 1990)."

[6] *Id.*

[7] *Id.* (quoting *Mendell*, 909 F.2d at 728 (alteration in original), *aff'd sub nom.*, *Gollust v. Mendell*, 501 U.S. 115 (1991)).

4

Despite the lack of precedent from the Second Circuit, several district courts in this circuit have held that Section 16(b) suits are not "derivative actions."[8] In *Schaffer ex rel. Laserlight, Inc. v. CC Investments, LDC*, the court thoroughly explained the differences between Section 16(b) cases and true derivative actions, as follows:

> Indeed, while there are some similarities between a § 16(b) case and a traditional shareholder derivative action, including the elements that both actions involve as the lead plaintiff a stockholder prosecuting the underlying claim after the corporation declines to do so and that any recovery inures to the issuer's benefit, § 16(b) suits and derivative actions differ in more fundamental ways. First, a § 16(b) cause of action is a statutory enabling right directly empowering the shareholder to sue; it is not a derivative or secondary right grounded on rights and interests possessed primarily by the corporation and emanating from common law. In other words, the § 16(b) action amounts to an *enforcement* right that, if successful, enables the corporation to gain from the redistribution of insiders' illicit profits to which the corporation had no right of recovery under common law causes of action.

---

[8] *See, e.g., Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC*, 286 F. Supp. 2d 279, 281 (S.D.N.Y. 2003) (stating that "although some courts use the term 'derivative' to describe § 16(b) lawsuits, under the pure application of the concept, a § 16(b) action is not a derivative action in the way that a typical shareholder derivative action is"); *Blau v. Oppenheim*, 250 F. Supp. 881, 885 (S.D.N.Y. 1966) ("Preliminarily it should be emphasized that strictly speaking a section 16(b) suit to recover short-swing profits is not derivative, although some of the cases so describe it.").

5

>Furthermore, as reflected in the plain language of the statute, § 16(b) was enacted because of the "national public interest which makes it necessary to provide for regulation and control of such transactions." 15 U.S.C. § 78b[.] By contrast, the underlying scope and purposes of the pure derivative cause of action serve broader objectives. Such an action enables the shareholder to prosecute a broader range of wrongdoing by corporate officers or agents committed against the corporation on the basis of recognized causes of action the corporation itself would have under the common law, and thereby to vindicate more extensive rights and interests on behalf of the corporation.[9]

In sum, this Court is satisfied that the instant Section 16(b) action is not a derivative action subject to the class action requirements found in Rule 23, including notice to shareholders and court approval only upon a finding of fairness, adequacy and reasonableness.[10] Nor is this action subject to the requirements of Rule 23.1. In a sense, Section 16(b) actions are *sui generis*. Accordingly, this Court approves the Settlement Agreement as a diligent prosecution of the Company's Section 16(b) rights.[11] This Court will retain jurisdiction to ensure that

---

[9] *Schaffer*, 287 F. Supp. 2d at 282 (emphasis in original, citations omitted).

[10] *See* Fed. R. Civ. P. 23(c)(2) and (e)(2) ("Rule 23").

[11] Although this Court did not analyze the Rule 23.1 requirements, the class action requirements under Rule 23, and the so-called *Grinnell* factors, it appears that the Settlement Agreement would satisfy all of them. *See* Settlement Mem. at 12-24. However, in an abundance of caution, this Court did check to ensure that the fees requested ($150,000.00 or 1/3 of the total settlement) were commensurate with the lodestar figure, which is $178,875.00 (resulting in a

the Settlement Agreement is executed in a timely manner. The Clerk of the Court is directed to close this case.

SO ORDERED:

/s/ Shira A. Scheindlin
Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         August 1, 2012

---

lodestar multiple of 0.84). Accordingly, this Court finds the amount of attorneys' fees to be fair and reasonable.

7